IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00302-CV

 

Motor Coach Industries, Inc., Motor 

Coach Industries International, Inc., 

MCII Holdings (USA), Inc., MCI Sales and 

Service, Inc. f/k/a Hausman Bus Sales, 

Inc., and Motor Coach Industries Mexico, 

S.A. de C.V. f/k/a Dina Autobuses, S.A. de C.V.,

                                                                                    Appellants

 v.

 

Marcopolo, S.A.,

                                                                                    Appellee

 

 



From the 170th District Court

McLennan County, Texas

Trial Court No. 2005-2105-1

 



MEMORANDUM  Opinion










 

        Motor Coach appeals the trial
court’s granting of the special appearance of Marcopolo, a Brazilian company.  See
Tex. R. Civ. P. 120a.  We
affirm.  

        Objections to Evidence.  In Motor Coach’s third
issue, it contends that the trial court erred in admitting the affidavits of
Ruben Antonio Bisi, an officer of Marcopolo.  Motor Coach argues conclusorily
that one of the affidavits was untimely, and that the affidavits were
conclusory.  

        An appellant’s “brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.”  Tex.
R. App. P. 38.1(h).  In “appeals in civil cases, . . . failure
to advance legal analysis, legal citations, and appropriate references to the
record will serve as the foundation for waiver of such complaints on appeal.”  In
re Rose, 144 S.W.3d 661, 676 (Tex. Rev. Trib. 2004), aff’d, 48 Tex. Sup. Ct. J. 104 (Nov. 5, 2004); see Tex.
R. App. P. 33.1(a); Fredonia State Bank v. Gen. Am. Life Ins. Co., 881
S.W.2d 279, 284 (Tex. 1994); In re B.C.S., No. 10-06-00408-CV, 2007 Tex.
App. LEXIS 5518, at *3 (Tex. App.—Waco July 11, 2007, no pet.) (mem. op.)
(termination of parent-child relationship); Batto v. Gafford, 119 S.W.3d
346, 350 (Tex. App.—Waco 2003, no pet.).  A brief that “fails to identify which
statements in the affidavit are defective” is inadequately briefed.  Churchill
v. Mayo, 224 S.W.3d 340, 347 (Tex. App.—Houston [1st Dist.] 2006, pet.
denied).

        Motor
Coach’s argument is as follows:

       The trial court made its
erroneous finding regarding Marcopolo’s website based on Bisi’s second
affidavit filed the day before the special appearance hearing.  The language of
Rule 120a(3) is specific in that affidavits “shall be served at least seven
days before the hearing.”  Tex. R. Civ.
P. 120a (3).  Because Bisi’s second affidavit was untimely, the
trial court erred in overruling Motor Coach’s objection and considering it as
competent evidence.

       Moreover, special appearance affidavits
must be “direct, unmistakable and unequivocal as to the facts sworn to.”  Ennis
v. Loisea[u], 164 S.W.3d 698, 703-704 (Tex. App.—Austin, 2005, no pet.[]).  Both of Bisi’s affidavits contain many conclusory statements
without any explanation of the facts underlying the asserted conclusions. 
Because the trial court’s finding was based on incompetent evidence, it cannot
stand.

 

(Br. at 30-31 (other citations
omitted) (bracketed alterations added); see Reply Br. at 10.)

        As to the substance of the
affidavits, Motor Coach does not identify any conclusory statements, and Motor
Coach’s issue is thus inadequately briefed.  

        As to both of Motor Coach’s
objections, any error is harmless.  In order to establish harm from the
admission of evidence, we “require the complaining party to demonstrate that
the judgment turns on the particular evidence admitted.”  Nissan Motor Co. v.
Armstrong, 145 S.W.3d 131, 144 (Tex. 2004); accord City of Brownsville v. Alvarado, 897 S.W.2d 750, 753-54 (Tex. 1995); see Tex. R. App. P. 44.1(a).  In our
determination of the merits of Motor Coach’s issues below, we do not consider
the evidence of which Motor Coach complains.

        We overrule Motor Coach’s
third issue.

        Special Appearance.  In Motor Coach’s first issue, it
contends generally that the trial court erred in granting Marcopolo’s special
appearance.  See Tex. R. Civ. P.
120a.  In Motor Coach’s second issue, it contends specifically that the trial
court erred in concluding that it lacked personal jurisdiction over Marcopolo.

        Preservation. 
First, Motor Coach argues that Marcopolo entered a general appearance and
thus waived its special appearance.  Motor Coach argues that Marcopolo’s oral
motion to sever, made during the hearing on Marcopolo’s special appearance but
before the trial court signed its order, and not expressly made subject to the
special appearance, waived the special appearance.  

        “As a prerequisite to
presenting a complaint for appellate review, the record must show that
. . . the complaint was made to the trial court by a timely request,
objection, or motion that . . . complied with the requirements of the
. . . Texas Rules of Civil or Appellate Procedure
. . . .”  Tex. R. App. P.
33.1(a).  Texas Rule of Civil Procedure 120a, in turn, provides that a “special
appearance shall be made by sworn motion filed prior to . . . any
other plea, pleading or motion; provided however, that . . . any
other plea, pleading, or motion may be contained in the same instrument or
filed subsequent thereto without waiver of such special appearance
. . . .”  Tex. R. Civ. P.
120a(1); see Dawson-Austin v. Austin, 968 S.W.2d 319, 322-23 (Tex. 1998).  “Every appearance, prior to judgment, not in compliance with this rule is a
general appearance.”  Tex. R. Civ. P.
120a(1).

        Marcopolo filed its special
appearance as its first pleading.  Marcopolo thus complied with Rule 120a’s due
order of pleading, and did not waive its special appearance.

        Merits.  Next,
Motor Coach argues that the trial court erred in concluding that it did not
have personal jurisdiction over Marcopolo.

        “Whether a court has personal
jurisdiction over a defendant is a question of law.”  BMC Software Belg.,
N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  “However, the trial
court frequently must resolve questions of fact before deciding the
jurisdiction question.”  Id.  If, in ruling on a special appearance,
“the trial court issues findings of fact and conclusions of law, the appellant
may challenge the fact findings on legal and factual sufficiency grounds.”  Id.  “The appellant may not challenge a trial court’s conclusions of law for factual
insufficiency; however, the reviewing court may review the trial court’s legal
conclusions drawn from the facts to determine their correctness.”  Id.  

        The Texas Long-Arm Statute
provides, “In addition to other acts that may constitute doing business, a
nonresident does business in this state if the nonresident . . .
commits a tort in whole or in part in this state . . . .”  Tex. Civ. Prac. & Rem. Code Ann. § 17.042
(Vernon 1997); see id. §§ 17.041-17.045 (Vernon 1997 & Supp.
2007); PHC-Minden, L.P. v. Kimberly-Clark Corp., 50 Tex. Sup. Ct. J.
1153, 1154, 2007 Tex. LEXIS 796, at *4 (Tex. Aug. 31, 2007); Michiana Easy
Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 788 (Tex. 2005).  “That
statute permits Texas courts to exercise jurisdiction over a nonresident
defendant that ‘does business’ in Texas, and the statute identifies some
activities that constitute ‘doing business.’”  PHC-Minden, 50 Tex. Sup. Ct. J. at 1154, 2007 Tex. LEXIS 796, at *4 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 17.042); accord
IRA Res., Inc. v. Griego, 221 S.W.3d 592, 596 (Tex. 2007) (per curiam); see
Michiana Easy Livin’ Country at 788.  “The list, however, is not
exclusive.”  PHC-Minden, 50 Tex. Sup. Ct. J. at 1154, 2007 Tex. LEXIS 796, at *4 (citing BMC Software, 83 S.W.3d at 795).  “[S]ection 17.042’s
language extends Texas courts’ personal jurisdiction ‘as far as the federal
constitutional requirements of due process will permit.’”  Id. (quoting U‑Anchor
Adver., Inc. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977)); accord IRA Res. at
596; see Michiana Easy Livin’ Country at 788.  The due-process
inquiry is “whether a defendant had minimum contacts with the jurisdiction
‘such that the maintenance of the suit does not offend “traditional notions of
fair play and substantial justice.”’”  Quill Corp. v. North Dakota, 504 U.S. 298, 307 (1992) (quoting Int’l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting
Milliken v. Meyer, 311 U.S. 457, 463 (1940))); see PHC-Minden, 50
 Tex. Sup. Ct. J. at 1154, 2007 Tex. LEXIS 796, at *4-*5; IRA Res. at
596 (quoting BMC Software at 795); Michiana Easy Livin’ Country at
788; U‑Anchor Adver. at 762.

        “‘[T]he constitutional
touchstone’ of the determination whether an exercise of personal jurisdiction
comports with due process ‘remains whether the defendant purposefully
established “minimum contacts” in the forum State.’”  Asahi Metal Indus. Co.
v. Superior Court, 480 U.S. 102, 108-109 (1987) (plurality op.) (quoting Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)) (alteration in Asahi
Metal Indus.); see Argentina v. Weltover, Inc., 504 U.S. 607, 619 (1992); Shaffer v. Heitner, 433 U.S. 186, 216 (1977); Hanson v. Denckla, 357
 U.S. 235, 253 (1958); PHC-Minden, 50 Tex. Sup. Ct. J. at 1154, 2007
Tex. LEXIS 796, at *4-*5; IRA Res., 221 S.W.3d at 596 (citing Am.
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002)); Michiana
Easy Livin’ Country, 168 S.W.3d at 784; Guardian Royal Exch. Assurance,
Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex. 1991). 
“[M]inimum contacts must have a basis in ‘some act by which the defendant
purposefully avails itself of the privilege of conducting activities within the
forum state, thus invoking the benefits and protections of its laws.’”  Asahi
Metal Indus. at 109 (quoting Burger King at 475) (alteration added);
see IRA Res. at 596 (citing Michiana Easy Livin’ Country at 785);
Guardian Royal Exch. Assurance at 227.  

        “This ‘purposeful availment’
requirement ensures that a defendant will not be haled into a jurisdiction
solely as a result of ‘random,’ ‘fortuitous,’ or ‘attenuated’ contacts
. . . .”  Burger King, 471 U.S. at 475 (quoting Keeton
v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984) & World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1979)); see Michiana
Easy Livin’ Country, 168 S.W.3d at 785; Guardian Royal Exch. Assurance, 815
S.W.2d at 226.  “Jurisdiction is proper . . . where the
contacts proximately result from actions by the defendant himself that
create a ‘substantial connection’ with the forum State.”  Asahi Metal
Indus., 480 U.S. at 109 (quoting Burger King at 475 (quoting McGee
v. Int’l Life Ins. Co., 355 U.S. 220, 223 (1957))) (emphasis in Burger
King); see IRA Res., 221 S.W.3d at 596 (citing Michiana Easy
Livin’ Country at 785); Guardian Royal Exch. Assurance at 226-27. 
“The ‘substantial connection’ between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the
defendant purposefully directed toward the forum State.”  Asahi Metal
Indus. at 112 (quoting Burger King at 475 & Keeton at
774) (emphasis in Asahi Metal Indus.); see IRA Res. at 596
(citing Michiana Easy Livin’ Country at 785); Guardian Royal Exch.
Assurance at 226.

       The placement of a product into the stream
of commerce, without more, is not an act of the defendant purposefully directed
toward the forum State.  Additional conduct of the defendant may indicate an
intent or purpose to serve the market in the forum State, for example,
designing the product for the market in the forum State, advertising in the
forum State, establishing channels for providing regular advice to customers in
the forum State, or marketing the product  through a distributor who has agreed
to serve as the sales agent in the forum State.

Asahi Metal Indus., 480 U.S. at 112; see Michiana Easy
Livin’ Country, 168 S.W.3d at 786; CMMC v. Salinas, 929 S.W.2d 435,
440 (Tex. 1996).

        “Personal jurisdiction exists
if the nonresident defendant’s minimum contacts give rise to either specific
jurisdiction or general jurisdiction.”  IRA Res., 221 S.W.3d at 596
(quoting BMC Software, 83 S.W.3d at 795); see Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Burger
King, 471 U.S. at 473 & n.15; PHC-Minden, 50 Tex. Sup. Ct. J. at 1154 & n.3, 2007 Tex. LEXIS 796, at *5 & n.3; Commonwealth
Gen. Corp. v. York, 177 S.W.3d 923, 925 (Tex. 2005) (per curiam).  “When a
State exercises personal jurisdiction over a defendant in a suit arising out of
or related to the defendant’s contacts with the forum, the State is exercising
‘specific jurisdiction’ over the defendant.”  Helicopteros Nacionales at
414 n.8 (quoting Arthur T. von Mehren & Donald T. Trautman, Jurisdiction
to Adjudicate: A Suggested Analysis, 79 Harv.
L. Rev. 1121, 1144-64 (1966)); accord PHC-Minden, 50 Tex. Sup. Ct. J. at 1154, 2007 Tex. LEXIS 796, at *5; Commonwealth Gen. at 925; BMC
Software at 796; Am. Type Culture Collection, 83 S.W.3d at 806; see
Burger King at 472.  “A Texas court may assert specific jurisdiction over
an out-of-state defendant if the defendant’s contact with this state is
purposeful and the injury arises from or relates to those contacts.”  Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 572-73 (Tex. 2007).  “When
specific jurisdiction is asserted, the minimum contacts analysis focuses on the
relationship among the defendant, the forum, and the litigation.”  IRA Res. at
596 (citing Moki Mac River Expeditions at 575-76).

        “When a State exercises
personal jurisdiction over a defendant in a suit not arising out of or related
to the defendant’s contacts with the forum, the State” is “exercising ‘general
jurisdiction’ over the defendant.”  Helicopteros Nacionales, 466 U.S. at
414 n.9 (quoting Lea Brilmayer, How Contacts Count: Due Process Limitations
on State Court Jurisdiction, 1980 S. Ct.
Rev. 77, 80-81; Von Mehren & Trautman, 79 Harv. L. Rev. at 1136-44; & Calder v. Jones, 465 U.S. 783, 786 (1984)); accord Burger King, 471 U.S. at 473 n.15; see PHC-Minden, 50 Tex. Sup. Ct. J. at 1154, 2007 Tex. LEXIS 796, at *5.  “A general jurisdiction inquiry
. . . is very different from a specific jurisdiction inquiry and
involves a ‘more demanding minimum contacts analysis,’ with a ‘substantially
higher’ threshold.”  PHC-Minden, 50 Tex. Sup. Ct. J. at 1155, 2007 Tex. LEXIS 796, at *10 (quoting CSR Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996) (orig. proceeding) & 4 Charles Alan
Wright & Arthur R. Miller, Federal Practice & Procedure § 1067.5
(2007)).  “General jurisdiction is established when the defendant has made
continuous and systematic contacts with the forum.”  Commonwealth Gen., 177
S.W.3d at 925; accord BMC Software, 83 S.W.3d at 796; see
Helicopteros Nacionales at 416; Perkins v. Benguet Consol. Mining Co., 342
U.S. 437, 438, 445, 448 (1952); Int’l Shoe, 326 U.S. at 317.  The
“‘substantial and continuous activity’ required for general jurisdiction
suggests that [the] defendant ‘must establish some close substantial connection
with the state approaching the relationship between the state and its own
residents.’”  PHC-Minden, 50 Tex. Sup. Ct. J. at 1155-56, 2007 Tex. LEXIS 796, at *10 (quoting Hall v. Helicopteros Nacionales de Colombia, S.A., 638
S.W.2d 870, 882 (Tex. 1982) (Pope, J., dissenting), rev’d, Helicopteros
Nacionales, 466 U.S. 408) (alteration added). “Usually, ‘the defendant must
be engaged in longstanding business in the forum state, such as marketing or
shipping products, or performing services or maintaining one or more offices
there; activities that are less extensive than that will not qualify for
general in personam jurisdiction.’”  Id., 50 Tex. Sup. Ct. J. at
1155 (quoting 4 Wright & Miller
§ 1067.5).  The “‘traditional indicia’ of general jurisdiction are ‘a home
base, an agent for the service of process, a local office, or the pursuance of
business from a tangible locale within the state.’”  Id., 50 Tex. Sup. Ct. J. at 1156, 2007 Tex. LEXIS 796, at *11 (quoting Mary Twitchell, The Myth
of General Jurisdiction, 101 Harv.
L. Rev. 610, 635 (1988)).

        General jurisdiction is
“‘dispute-blind,’ an exercise of the court’s jurisdiction made without regard
to the nature of the claim presented.”  PHC-Minden, 50 Tex. Sup. Ct. J.
at 1156, 2007 Tex. LEXIS 796, at *11 (quoting Twitchell, 101 Harv. L. Rev. at 613).  “It involves a
court’s ability to exercise jurisdiction over a nonresident defendant based on
any claim, including claims unrelated to the defendant’s contacts with the
state.”  Id., 2007 Tex. LEXIS 796, at *11-*12 (citing 16 James Wm. Moore et al., Moore’s Federal
Practice § 108.40 (3d ed. 2007)).  The general-jurisdiction
analysis may “construct a hypothetical claim without any forum connections ‘to
insure that any related forum activities of the defendant are not improperly
infiltrating the dispute-blind inquiry.’”  Id., 2007 Tex. LEXIS 796, at *12 (quoting Charles W. “Rocky” Rhodes, Clarifying General
Jurisdiction, 34 Seton Hall
L. Rev. 807, 819 (2004)).  

For example:

. . . .  [W]ith respect to a
foreign corporation, do the corporation’s actual [forum-state] contacts support
jurisdiction even for a hypothetical cause of action arising from its sale of a
product in Germany that injured a German citizen?

PHC-Minden, 50 Tex. Sup. Ct. J. at 1156, 2007 Tex. LEXIS 796, at *12-*13 (quoting Rhodes, 34 Seton
Hall L. Rev. at 819-20) (alterations added).

        Motor Coach argues, as to
specific jurisdiction, first that Marcopolo knew that “its buses were being
sold in the United States.”[1]  (Br. at 27; see Reply Br. at 7, 8.)  Motor Coach points to evidence that the parties’ contract
permitted Marcopolo to market certain buses in North America, and permitted
Motor Coach to use certain Marcopolo brands on buses in the United States.  The trial court found:

       Section 4.14 of the February 21, 1992
agreement between Marcopolo and [Motor Coach, formerly known as] Dina
Autobuses, S.A. de C.V. (“Dina”) (Contrato De Fornecimento De Conjuntos KM CKD
E De Tecnologia) provides that Dina cannot sell Marcopolo products to other
countries without Marcopolo’s previous consent.  Dina never requested consent
to sell Marcopolo products in the United States, and Marcopolo never gave its
consent to Dina to sell Marcopolo products in the United States.

[sic] (III C.R. at 389 (bracketed
alterations added).)  Motor Coach also points to evidence of Marcopolo’s press
releases and web site.  Assuming that evidence established that Marcopolo knew
that its buses were entering the stream of commerce in the United States, the evidence would not establish additional conduct indicating that Marcopolo had an
intent to serve the market in Texas.  

        Next, Motor Coach argues that
Marcopolo “met United States federal regulations with its buses.”  (Br. at 28; see Reply Br. at 10.)  Motor Coach points to evidence that some of Marcopolo’s
windshields complied with certain federal regulations.  The trial court found:

       Marcopolo sells kits to assemble bus bodies
in Mexico.  The kits have not been approved by the United States Department of
Transportation and cannot be sold in the United States.  As a result, Marcopolo
does not sell any bus body kits in the United States.  Any company that wants
to sell the buses assembled from the Marcopolo bus body kits must seek approval
of the United States Department of Transportation.  Marcopolo has no knowledge
of this process and plays no role in this process.  Marcopolo has no knowledge
where buses will be sold after it sells the bus body kits in Mexico.

(III C.R. at 388.)  Evidence that some
of Marcopolo’s suppliers designed for the United States market some of the
parts Marcopolo incorporated into its bus kits does not establish that
Marcopolo designed the kits for the Texas market, and thus does not show additional
conduct indicating that Marcopolo had an intent to serve the Texas market.

        Motor Coach does not establish
that Marcopolo had minimum contacts with Texas so that the trial court had
specific jurisdiction over Marcopolo.

        Next, Motor Coach argues generally, “Marcopolo’s
contacts are sufficient to support asserting general jurisdiction.”  (Br. at 25; Reply Br. at 12.)  Besides the evidence referred to above, Motor Coach points to evidence
that Marcopolo had previously delivered buses to a Texas company.  The trial
court found:

       Marcopolo delivered microbuses to Houston,
Texas from 1987 to 1991 as part of a single agreement with an entity known as
Stewart & Stevenson Services, Inc. (“S&S”).  S&S had solicited
business from Marcopolo, and Marcopolo had signed the agreement in Brazil.  The microbus that was the subject of Marcopolo’s agreement with S&S was a 25
foot shuttle bus—a vehicle different from and having no relation to the buses
sold by M[otor ]‌C[oach]
in the United States.  Marcopolo’s services under the agreement with S&S
ended in 1992.  Marcopolo has had no other agreements in Texas or the United States.

(III C.R. at 388.)  Motor Coach
concedes, “Had this case been brought in 1992 instead of 2003,” when the
plaintiffs brought suit against Motor Coach, “Marcopolo would have been subject
to personal jurisdiction because of these extensive general contacts.”  (Br. at 26.)  Motor Coach does not point to evidence that Marcopolo maintained an office or
otherwise conducted business in Texas.  Nor does Motor Coach point to evidence
that would show that Marcopolo’s Texas contacts support jurisdiction in Texas
for a hypothetical cause of action for an injury to a resident of a third state
arising in that state.  Motor Coach thus does not establish that Marcopolo had
continuous and systematic contacts with Texas so that the trial court had
general jurisdiction over Marcopolo.

        Motor Coach does not establish
that Marcopolo has minimum contacts with Texas to support personal jurisdiction
over Marcopolo.  The trial court did not err in granting Marcopolo’s special
appearance.  We overrule Motor Coach’s first and second  issues.

        Stay.  In Motor Coach’s fourth issue, it contends
that the trial court erred in not staying trial pending determination of the
appeal.  

        We assume without deciding
that Motor Coach’s general objection preserves its complaint.  (See 1
R.R. at 61 (“I believe that would be contrary possibly to the rules which
would—if an appeal did happen to be made of that ruling, then that might have
certain results with respect to the trial setting or this cause number
. . . .”)); Tex.
R. App. P. 33.1(a); In re S.H., No. 10-02-086-CV, 2004 Tex. App. LEXIS 1450, at *12 (Tex. App.—Waco Feb. 11, 2004, no pet.) (mem. op.)
(termination of parental rights); Greenstein, Logan & Co. v. Burgess
Mktg., Inc., 744 S.W.2d 170, 184 (Tex. App.—Waco 1987, writ denied); S.E.A.
Leasing, Inc. v. Steele, No. 01-05-00189-CV, 2007 Tex. App. LEXIS 1337, at
*12 (Tex. App.—Houston [1st Dist.] Feb. 22, 2007, pet. filed) (mem. op.).

        “An interlocutory appeal” of a
special appearance “stays the commencement of a trial in the trial court
pending resolution of the appeal.”  Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(b) (Vernon Supp. 2007); see
id. (a)(7) (Vernon Supp. 2007).

        This is not an interlocutory
appeal, it is the appeal of a final order.  After granting Marcopolo’s special
appearance and dismissing the claims against Marcopolo, the trial court severed
Motor Coach’s claims against Marcopolo.  The interlocutory-appeal statute does
not govern Motor Coach’s appeal.[2]

        We overrule Motor Coach’s
fourth issue.

        CONCLUSION.  Having overruled Motor
Coach’s issues, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

        Justice Vance, and

        Justice Reyna

        (Justice Vance concurs in the judgment
with a note)*

Affirmed

Opinion delivered and filed November 21, 2007

[CV06]

 

        * “(Having seen the mandamus
seeking to stay the trial below and two appeals resulting from the same case, I
now agree with Motor Coach that when Section 51.014(b) of the Civil Practice
and Remedies Code applies, a trial court has no discretion to sever the issue
subject to an interlocutory appeal.  The Legislature has determined that it is
better to stay the trial during an interlocutory appeal than to fracture the
proceeding, as has resulted here.  Thus, I join the opinion except that I
believe the severance order was error but, because the special appearance was
properly granted, harmless.)”

 









        [1] Motor Coach contends, without further argument,
that “Marcopolo failed to negate all possible bases of personal jurisdiction
alleged in the pleadings or raised without objection by the evidence.”  (Br. at 18 (citing Zimmerman v. Glacier Guides, Inc., 151 S.W.3d 700, 703-704 (Tex.
App.—Waco 2004, no pet.)).)  “The plaintiff bears the initial burden of
pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute.  The nonresident defendant then assumes the burden of negating all
bases of jurisdiction in those allegations.”  Moki Mac River Expeditions, 221
S.W.3d at 574 (citing Am. Type Culture Collection, 83 S.W.3d at 807); accord
BMC Software, 83 S.W.3d at 793; see Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-17.045; PHC-Minden,
50 Tex. Sup. Ct. J. at 1154, 2007 Tex. LEXIS 796, at *4.  The only basis of
personal jurisdiction in the petition is the allegation that Marcopolo
committed a tort in Texas.  See Tex.
Civ. Prac. & Rem. Code Ann. § 17.042(2).  The trial court found
that Marcopolo “ha[d] not committed any tort, in whole or in part, within Texas.”  (III C.R. at 389.)  Motor Coach does not point to other evidence.  We address that
basis below.





        [2] Assuming,
moreover, that the trial court erred, any error was harmless.  Motor Coach
argues that Marcopolo should have been submitted to the jury as a responsible
third party.  The law governing responsible third parties at the time of filing
of the plaintiffs’ suit provided that a responsible third party was only a
person as to whom “the court in which the action was filed could exercise
jurisdiction over the person.”  See Act of May 8, 1995, 74th Leg., R.S.,
ch. 136, § 1, sec. 33.011(6)(A), 1995 Tex. Gen. Laws 971, 973 (amended
2003) (current version at Tex. Civ.
Prac. & Rem. Code Ann. § 33.011(6) (Vernon Supp. 2007)).  For
the reasons stated above, the trial court lacked personal jurisdiction over
Marcopolo.  Motor Coach could not have joined Marcopolo as a responsible third
party.